UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LUIS AMADOR,

                              Plaintiff,

                                                    20-cv-10492 (PKC)

            -against-                               OPINION AND ORDER


UNITED STATES OF AMERICA,
DRUG ENFORCEMENT ADMINISTRATION,
and SPECIAL AGENT MARLOW LUNA,

                              Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

            In this case, plaintiff Luis Amador, a "Latin-American legal resident" residing in

the Bronx, brings claims, including false arrest and malicious prosecution, against the United

States of America, the Drug Enforcement Agency ("DEA"), and DEA Special Agent Marlow

Luna.  The claims relate to the allegedly wrongful arrest, detention and prosecution of Amador

for drug trafficking crimes of which Amador was ultimately acquitted.  Defendants move to

dismiss for failure to state a claim, Rule 12(b)(6), Fed. R. Civ. P.  For reasons explained, the

motion will be granted.


BACKGROUND

            For purposes of the motion, the Court accepts the well-pleaded factual allegations

as true, drawing all reasonable inferences in favor of the non-movant, Amador.  See Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009); In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).

The facts pled in the Amended Complaint are sparse.  In general, the Amended Complaint levies allegations against Special Agent Luna for "wrongfully accusing [Amador] of involvement in drug trafficking" and "further[ing] those lies before a grand jury" that ultimately indicted Amador on criminal charges.  (Am. Compl't at 1.)  In particular, the Amended Complaint alleges that on August 2, 2017, at approximately 6:00 p.m., Amador was walking on the sidewalk of Nelson Avenue between 174th Street and 175th Street in the Bronx, New York.  (Id.)  At this time and place, Amador alleges that he was "accosted" by Agent Luna and NYPD Detective Cruz Ramos, who allegedly "handcuffed and threw Mr. Amador to the ground face down." (Id. at 2.)  Amador then claims that he was placed in a vehicle where Agent Luna and Detective Ramos questioned him about the location of illegal drugs.  (Id.)  While in the vehicle, Detective Ramos allegedly "struck [Amador] in the face."  (Id.)

Amador alleges that the officers then drove him to 1678 Nelson Avenue, where he rented a bedroom in Apartment 5C.  (Id.)  He alleges that Agent Luna "enter[ed] the apartment from the fire escape and walked throughout it".  (Id.)  Agent Luna found illegal drugs during this search of the apartment, but none of the drugs were found in the particular bedroom rented by Amador.  (Id.)

After the apartment was searched, Amador was taken to "multiple DEA offices and NYPD precincts" where he was questioned several times about illegal drug possession.  (Id.)  Amador was "asked numerous times by DEA and NYPD personnel" about cooperating with the government to assist in the prosecution of others that were arrested in the apartment raid and "was told that 'things' wouldn't go well for him if he didn't 'work with them'."  (Id.)

Approximately two days after his arrest, Amador was arraigned and bail was set at $150,000, which Amador could not post; Amador was accordingly detained in the

Metropolitan Detention Center.  (Id. at 3.)  Eventually Amador posted bail, however his bail was revoked eleven or twelve days later after prosecutors received an anonymous phone call stating that Amador intended to flee to the Dominican Republic.  (Id.)  Amador contends that the flight risk allegation was "baseless."  (Id.)

Amador was detained for approximately 16 months at the MDC and Otis Bantum Correctional Center on Rikers Island.  (Id.)  Amador was ultimately found not guilty by a jury on the charges in Manhattan Criminal Court.  (Id.)


PROCEDURAL HISTORY

The present action is not the first lawsuit brought by Amador relating to his arrest on August 2, 2017 and subsequent detention.  On August 15, 2019, Amador brought suit in state court against the New York Police Department, the City of New York and Detective Cruz Ramos, alleging claims of false arrest and malicious prosecution.  See Amador v. City of New York, et al., Index No. 29567/2019E, Dkt. No. 5 (N.Y. Sup. Aug. 15, 2019).

On August 4, 2020, the defendants removed the state court case to federal court because Detective Ramos was certified as a deputized federal agent with respect to the events of August 2, 2017; the removed case was assigned to Judge Abrams of this District.  See Amador v. City of New York, et al., 20-cv-956 (RA), Dkt. No. 1 (S.D.N.Y. Feb. 4, 2020).  On January 15, 2021, the action before Judge Abrams was voluntarily dismissed as to all claims against all defendants, except for a malicious prosecution claim against the City of New York.  Id. at Dkt. No. 31.  The surviving claim against the City was remanded to state court on July 6, 2021.  Id. at Dkt. No. 47.

Amador filed the present action on December 10, 2020.  Defendants' pre-motion letter set forth the legal and factual basis for their proposed motion to dismiss (Doc 12).  The Court granted Amador leave to amend his complaint (Doc 14) and he filed an Amended Complaint on April 2, 2021 (Doc 15).

DISCUSSION

The Court will address each argument in turn and begins with a discussion of the standards on a motion to dismiss.

A.  Legal standard for a motion to dismiss.

Defendants move to dismiss the Amended Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  On a motion to dismiss, the Court draws all reasonable inferences in favor of the non-movant.  In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).  Nevertheless, legal conclusions and "[t]hreadbare recitals of the elements of a case of action" are not entitled to the presumption of truth.  Iqbal, 556 U.S. at 678.

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  Thea v. Kleinhandler, 807 F.3d 492,

501 (2d Cir. 2015).  Here, defendants rely solely on the facts alleged in the Amended Complaint to support its statute of limitations defense raised on its Rule 12(b)(6) motion.

B.  Documents outside the Amended Complaint.

        "When determining the sufficiency of a plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in [the] complaint . . . , documents attached to the complaint as an exhibit or incorporated in it by reference . . . , matters of which judicial notice may be taken . . . , or documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied in bringing suit."  Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993).  The allegations in the Amended Complaint are sparsely pled but make direct reference to and are based upon Amador's prior state prosecution.  Therefore the Court takes judicial notice of certain documents outside the Amended Complaint.

        In particular, to adjudicate Amador's malicious prosecution claim, which is based entirely on the allegation that Agent Luna "furthered . . . lies before a grand jury" to secure an indictment against him, the Court will take judicial notice of the grand jury indictment against Amador and the transcript of grand jury testimony that contains Agent Luna's allegedly false and fraudulent statements.  Because the Amended Complaint's malicious prosecution claim is based upon and makes reference to testimony from a grand jury proceeding, the transcript of the grand jury proceeding, which defendant Amador attached as an exhibit to his brief in opposition to the motion to dismiss, may be considered on this motion.  Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (holding a document integral to a complaint where the complaint "relies heavily upon its terms and effect"); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991). (Doc 24, Ex. A, "Grand Jury Transcript").  The indictment and fact of the state prosecution are matters of public record, and courts in this District regularly take judicial notice

of such prosecutions and their indictments.  <u>Shmueli v. City of New York</u>, 424 F.3d 231 (2d Cir.

2005); <u>Sharp v. Morgenthauu</u>, No. 08 Civ. 5919 (PKC), 2010 WL 339767 at *2 (S.D.N.Y. Jan.

25, 2010).  (Doc 20, Ex. B, "Indictment").

C.   <u>The DEA is not a suable entity on Amador's claims.</u>

      The Amended Complaint brings claims of false arrest and malicious prosecution

under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* ("FTCA"),[1] and constitutional

claims pursuant to <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971).  The Amended

Complaint purports to bring these claims against the United States, the Drug Enforcement

Agency, and Agent Luna, but does not specify which claims are brought against which

defendants.

      Only the United States may be sued under the FTCA, which provides a limited

waiver of sovereign immunity for suits against the United States as defendant.  <u>See</u> 28 U.S.C.

Section 1346(b)(1); <u>Hamm v. United States</u>, 483 F.3d 135, 137 (2d Cir. 2007); <u>F.D.I.C. v.

Meyer</u>, 510 U.S. 471, 475–77 (1994).  Accordingly, Amador's FTCA claims may be construed

as asserted against defendant United States and no other defendant.  Only individual federal

employees may be sued on a <u>Bivens</u> claim for actions taken within the scope of their federal

employment.  <u>See Bivens</u>, 403 U.S. at 392–96; <u>Meyer</u>, 510 U.S. at 479.  Amador's <u>Bivens</u> claims

may be construed as asserted against defendant Luna and no other defendant.  The DEA is not a

suable entity with respect to the claims alleged in the Amended Complaint, and therefore the

DEA will be dismissed as a defendant.

---

[1] The Amended Complaint also purports to bring claims under "New York state law" in its first and second causes of action.  New York state law is incorporated in the decision as the source of substantive law for FTCA claims.

D.  <u>Amador's false arrest claim will be dismissed as untimely.</u>

Amador brings a FTCA claim of false arrest against Agent Luna, the DEA and the United States based on the circumstances of his detention and subsequent arrest on August 2, 2017.  The Court will construe the claim as asserted against the only proper FTCA defendant, the United States.  The government moves to dismiss the false arrest claim as time-barred and for failure to state a claim.  For the foregoing reasons, Amador's false arrest claim will be dismissed as untimely.

A tort claim brought under the FTCA "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."  28 U.S.C. § 2401(b).

Amador's false arrest claim accrued on the date of his arrest, August 2, 2017. Amador commenced this action with the filing of the original complaint on December 14, 2020, more than three years after the arrest and outside of the limitations period set by section 2401(b).

Amador seeks to rely on a tolling provision that has no applicability to his circumstances.  Before filing suit under the FCTA, a claimant must file a notice of claim with the appropriate federal agency and the agency must have a finally denied that claim; if the agency fails to act within six months, the claim is deemed denied.  28 U.S.C. § 2675(a).[2]  In the circumstance of a premature filing of a civil action, <u>i.e.</u>, one instituted prior to exhaustion of the agency claim requirement, tolling is provided for a period of up to sixty days from dismissal if (1) "the [original] action is dismissed for failure first to present a claim pursuant to section

---

[2] See <u>McNeil v. United States</u>, 508 U.S. 106, 112 (1993) ("The most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process.")

2675(a)" and (2) the original action so dismissed would have been timely when filed. 28 U.S.C. § 2679(d)(5).

But Amador's first action, removed from state court, was not "dismissed for failure to present a claim" to the agency. It was voluntarily dismissed (with remand of the claim against the City), pursuant to a stipulation between the parties that was silent as to its purpose. This is not a case in which Amador can claim that there was some irrefutable signal from the government or the Court that the action would be dismissed if he did not consent to a voluntary dismissal.[3] No motion to dismiss had been made by the government. Judge Abrams issued a Memorandum and Order denying Amador's motion to remand, but that decision makes no mention of whether Amador had failed to first present his claim to the federal agency. See Amador v. City of New York, et al., 20-cv-956 (RA), Dkt. No. 24 (S.D.N.Y. Dec. 9, 2020). The voluntary dismissal was presented to the Court less than a month after the denial of remand.

Amador derives no benefit from the circumstance that he filed a claim with the DEA on May 12, 2020 (Doc 22, Ex. 1) because his claim presented in a judicial forum was never dismissed for failure to present the claim to the agency, a necessary condition to invoke tolling under section 2679(d)(5). Simply put, Amador's claim was voluntarily dismissed on the heels of the denial of his motion to remand and not for failure to first present the claim to the federal agency.

No equitable tolling doctrine saves Amador's claim. Equitable tolling is available only in "rare and exceptional circumstances" where a party acts "reasonably diligently in determining the appropriate parties to sue" but is unable to determine that an individual is acting

---

[3] There is no support for the proposition that, even if prompted by a signal from the government or the court, a voluntary dismissal would support tolling under section 2679(d)(5). If a party's intent was to be able to claim the benefit of tolling, it would be a simple matter to consent to the court's dismissal of the action for failure to first present the claim to the agency.

in a federal capacity.  Phillips v. Generations Family Health Center, 723 F.3d 144, 150 (2d Cir. 2013).

Amador's brief makes much of NYPD Detective Ramos's status as a deputized federal agent and his lack of awareness of this circumstance when he sued Ramos in state court. That may be true, but the present action names Special Agent Luna, the DEA and the United States as parties.  Detective Ramos, the original "named tortfeasor," is not and never has been a party to the present case.  The present case is against Agent Luna and the United States, and Amador sued these defendants for the first time on December 14, 2020.

The Amended Complaint alleges that Agent Luna was employed as a Special Agent of the DEA.  (Am. Compl't ¶ 9.)  There is no allegation that Agent Luna's status as a federal DEA agent was ever ambiguous or obscured.  On the contrary, the Amended Complaint alleges that Amador was "taken to multiple DEA offices and NYPD precincts" for questioning and was "asked numerous times by DEA and NYPD personnel" about cooperating with the government.  These allegations in the Amended Complaint contradict any argument that Amador was unaware that the DEA was involved in his arrest and prosecution.

Section 2679(d)(5) and the tolling considerations in Celestine v. Mount Vernon Neighborhood Health Center, 403 F.3d 76, 84 (2d Cir. 2005) exist to relieve plaintiffs that have reasonable difficulty determining that a tortfeasor is employed by the federal government.  There is no indication that difficulties existed in identifying Special Agent Luna as a federal law enforcement agent.

Amador does not present the "extraordinary circumstances" that, if proven, would equitably toll the statute of limitations.  For these reasons, Amador's false arrest FTCA claim against the United States will be dismissed as untimely.

E.  Amador's malicious prosecution claim will be dismissed for failure to state a claim.

Amador also brings a claim against Agent Luna, the DEA and the United States for malicious prosecution. As noted, FTCA claims may only be asserted against the United States and not agencies or their employees.  This claim will be construed as asserted only against the United States.

State law is the source of substantive liability for FTCA claims.  See F.D.I.C. v. Meyer, 510 U.S. 471, 478 (1994).  "To establish a malicious prosecution claim . . . a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  Stampf v. Long Island R. Co., 761 F.3d 192, 198 (2d Cir. 2014).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York," and "indictment by a grand jury creates a presumption of probable cause."  Manganiello v. City of New York, 612 F.3d 149, 162 (2d Cir. 2010) (citing Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003)).  That presumption may be rebutted only "by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith'."  Id.  Indeed, to overcome this presumption there must be some indication that the officers "lied in order to secure an indictment" and that "a jury could reasonably find that the indictment was secured through bad faith or perjury."  Boyd v. City of New York, 336 F.3d 72, 77 (2d Cir. 2003).

Here, Amador was indicted by a grand jury.  Thus, the malicious prosecution claim can only proceed if Amador adequately alleges that the indictment was "procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  Savino,

331 F.3d at 72.  With respect to statements made to the grand jury, the Amended Complaint alleges in a conclusory fashion that Agent Luna "furthered . . . lies before the grand jury." (Am. Compl't at 1.)  The Amended Complaint provides no further detail and points to no specific statements made to the grand jury that were false, fraudulent or made in bad faith.  Construing the Amended Complaint in the light most favorable to Amador, the Court assumes that the alleged lies furthered before the grand jury were related to the Amended Complaint's allegations that Agent Luna told the grand jury that he could see drugs in Amador's backpack prior to detaining Amador.

The Court will take account of the grand jury testimony of Luna because it is integral to the Amended Complaint.  Luna testified that he was "conducting surveillance in the vicinity of 1678 Nelson Avenue" when he observed Amador walk out of 1678 Nelson Avenue "with an orange bag" within which Luna could "tell was a big box."  (Grand Jury Transcript at 23–24.)  Luna testified that he could tell that it was a big box "[b]ased on the shape of what was inside of the bag."  (Id. at 24.)  Agent Luna also testified that "[i]t was raining very hard" at the time.  (Id.)  Luna testified further that while surveilling Amador he temporarily lost sight of him, and when he regained sight of Amador the box in the bag was gone and upon seeing this he detained Amador.  (Id. at 24–25.)  Based on this testimony, along with further testimony from Agent Luna and other law enforcement officers regarding the extent of the investigation and sting that resulted in the arrests of Amador and others residing at 1678 Nelson Avenue Apartment 5C on narcotics charges on August 2, 2017, the grand jury indicted Amador and several other residents of 1678 Nelson Avenue Apartment 5C.

The Amended Complaint levies no allegations that contradict the content of Agent Luna's testimony to the grand jury or explain why Luna's testimony was false, fraudulent

or otherwise in bad faith.  The Amended Complaint expresses skepticism that Luna could tell through Amador's bag and in the heavy rain that the bag contained drugs, and states that "Agent Luna, with apparent x-ray vision, claimed [he] could 'see' drugs, in heavy rain, through Mr. Amador's backpack as he walked down the street."  (Am. Compl't at 2.)  But Agent Luna never stated to the grand jury that he could "see drugs."  Rather, Luna stated that he saw a "big box" in Luna's bag and deduced that Amador gave that box to another individual, at which point he detained Amador.  Based on this testimony, along with further testimony from Agent Luna and other law enforcement officers, the grand jury indicted Amador.  Amador fails to plausibly allege facts that cast serious doubt on the truthfulness of Luna's grand jury testimony or whether it was made in bad faith.  The allegations are thus insufficient to overcome the presumption of probable cause created by the indictment.

Similarly, Amador fails to adequately allege actual malice by Agent Luna.  Actual malice does not require spite or hatred, but only allegations that "the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served."  Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) (quoting Nardelli v. Stamberg, 44 N.Y.2d 500, 502–03 (1978)).  The closest Amador comes to alleging actual malice are the allegations that Agent Luna made "baseless and unfounded accusations," "falsely accused Mr. Amador of being a 'drug mule'" and "wrongfully accus[ed] [Amador] of involvement in drug trafficking."  (Am. Compl't at 1.)  These alleged statements by Agent Luna in the course of his interactions with Amador do not point to a "wrong or improper motive" on Luna's part in testifying before the grand jury.  Indeed, allegations are insufficient to support a malicious prosecution claim where plaintiff "essentially alleg[es] only that the defendant officers *must have* fabricated evidence in light of [plaintiff's] version of the

events and his ultimate acquittal."  Lewis v. City of New York, 591 F. App'x 21, 22 (2d Cir.

2015) (emphasis in original).  Without alleging more, Amador fails to adequately plead facts to

support the actual malice element of the malicious prosecution claim.

      For these reasons, the malicious prosecution claim will be dismissed.

F.   Amador's claims pursuant to Bivens will be dismissed.

      Finally, Amador brings several claims against Agent Luna in his individual

capacity pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).  In particular,

Amador alleges "deprivation of the following constitutional rights: (a) freedom from

unreasonable searches and seizure of his person, including the excessive use of force; (b)

freedom from arrest without probable cause; (c) freedom from false imprisonment, meaning

wrongful detention without good faith, reasonable suspicion or legal justification of which

Plaintiff was aware and did not consent; (d) freedom from the lodging of false charges against

them by police; (e) freedom from abuse of process and malicious prosecution; (f) the enjoyment

of equal protection, privileges and immunities under the law; and (g) the denial of right to a fair

trial."  (Am. Compl't ¶ 33.)

      The Court first must address whether plaintiff's Bivens claims were timely filed.

"The statute of limitations for Bivens claims is governed by the statute of limitations applicable

to New York state law 'personal injury claims not sounding in intentional tort'."  Gonzalez v.

Hasty, 802 F.3d 212, 220 (2d Cir. 2015) (quoting Chin v. Bowen, 833 F.2d 21, 23–24 (2d Cir.

1987)).  Section 214(5) of the New York Civil Practice Law and Rules provides a three-year

statute of limitations for such claims.  "Federal law, however, governs the determination of when

the statute of limitations begins to run."  Gonzalez, 802 F.3d at 220 (quoting Kronisch v. United

States, 150 F.3d 112, 123 (2d Cir. 1998)).  "A Bivens claim accrues under federal law for statute

of limitations purposes when a plaintiff either has knowledge of his or her claim or has enough information that a reasonable person would investigate and discover the existence of a claim." Id.

Amador was arrested on August 2, 2017, was acquitted after trial on December 5, 2018, and filed the present action on December 14, 2020.  Several of Amador's Bivens claims accrued on August 2, 2017, the date of his arrest, or shortly thereafter and are therefore brought outside of the statute of limitations period.

Amador alleges that on August 2, 2017 Agent Luna "handcuffed and threw Mr. Amador to the ground face down" and "entered [Amador's] apartment from the fire escape and walked throughout it, including Mr. Amador's room[.]"  (Am. Compl't at 2.)  Though the Amended Complaint does not tie its constitutional claims to particular allegations, these allegations are the only allegations that could reasonably form the basis of Amador's constitutional claim of "(a) freedom from unreasonable searches and seizure of his person, including the excessive use of force" against Agent Luna.  Because the events underlying the excessive force and unreasonable search and seizure claim occurred on August 2, 2017, the date of Amador's arrest and more than three years before the filing of the present action, this claim will be dismissed.  Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980).

The basis of Amador's next constitutional claim, "(b) freedom from arrest without probable cause," naturally accrued on the date of Amador's arrest, August 2, 2017.  This, again, accrued more than three years before the filing of the present action, and therefore this claim will also be dismissed as untimely.

Amador next brings a constitutional claim for deprivation of Amador's right of "(c) freedom from false imprisonment, meaning wrongful detention without good faith,

reasonable suspicion or legal justification of which Plaintiff was aware and did not consent."  In

Wallace v. Kato, 549 U.S. 384, 380–90 (2007), the Supreme Court held that because "false

imprisonment consists of detention without legal process, a false imprisonment ends once the

victim becomes held *pursuant to such process*—when, for example, he is bound over by a

magistrate or arraigned on charges."  (emphasis in original).  After arraignment, "unlawful

detention forms part of the damages for the entirely distinct tort of malicious prosecution[.]"  Id.

(internal quotations omitted).  Thus, Amador's false imprisonment claim accrued at the time he

was arraigned, which the Amended Complaint alleges occurred "[a]pproximately two days" after

he was arrested – that is, approximately August 4, 2017.  (Am. Compl't at 3.)  Because August 4,

2017 was more than three years before the filing of the original complaint in this case on

December 14, 2020, Amador's false imprisonment claim will be dismissed as untimely.

       The Amended Complaint is sparsely pled with respect to Amador's constitutional

claim of deprivation of "(d) freedom from the lodging of false charges against them by police".

Nevertheless, Second Circuit precedent suggests that the appropriate date for accrual of a false

charges claim would be "the time at which plaintiff knew of his injury."  Singleton, 632 F.2d

189–91; see also Gonzalez, 802 F.3d at 220.  Here, the appropriate date of accrual would be

either the date of Amador's arrest (August 2, 2017) or the date of Amador's arraignment on the

allegedly false charges (August 4, 2017).  In either case, Amador's false charges claim was not

filed within the applicable three-year statute of limitations period and will be dismissed.

       Amador pleads a claim of deprivation of "(f) the enjoyment of equal protection,

privileges and immunities under the law" in a conclusory manner and does not show facts that

allegedly support this claim.  Iqbal, 556 U.S. at 678.  If Amador is alleging that his arrest was

made on the basis of impermissible criteria in violation of his equal protection rights, because

Amador's arrest occurred on August 2, 2017 it is outside the statute of limitations period for Bivens actions.  This claim will be dismissed.

Thus, the only constitutional claims that are timely are "(e) freedom from abuse of process and malicious prosecution" and "(g) the denial of right to a fair trial," both of which accrued on December 5, 2018, the date of Amador's acquittal.  The Court will address the merits of these Bivens claims.

Bivens applies only in very particular circumstances and remedies under Bivens should not be extended to new contexts.  Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017) ("[E]xpanding the Bivens remedy is now a disfavored judicial activity"); Arar v. Ashcroft, 585 F.3d 559, 571 (2d Cir. 2009) (en banc) ("Bivens remedy is an extraordinary thing that should rarely if ever be applied in 'new contexts'").  Nevertheless, the Supreme Court has counseled that "disposing of a Bivens claim by resolving the constitutional question, while assuming the existence of a Bivens remedy[,] is appropriate in many cases."  Hernandez v. Mesa, 137 S. Ct. 2003, 2007 (2017).  The present case provides appropriate circumstances for assuming a Bivens remedy and deciding the constitutional questions.

Amador's remaining constitutional claims are for, essentially, malicious prosecution and denial of his right to a fair trial.  The standards for a claim of malicious prosecution are the same whether asserted under the FTCA or as a constitutional claim, as they are both derived from the substantive state law of malicious prosecution.  See Barone v. United States, 722 F.Appx. 57, 60 (2d Cir. 2018) (applying same standard to malicious prosecution claims under FTCA and Bivens).  Therefore, for the same reasons discussed in Part E, *supra*, the constitutional claim of malicious prosecution will be dismissed.

The standard for proper pleading of a denial of a right to a fair trial claim is similar to a malicious prosecution claim.  "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial."  Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997).  Nevertheless, like a malicious prosecution claim, "[a] claim asserting deprivation of a right to a fair trial cannot survive a motion to dismiss based only on broad and conclusory allegations that the officers created false narratives."  Rivera v. City of New York, No. 16 Civ. 9709 (GHW), 2019 WL 252019 at *8 (S.D.N.Y. Jan. 17, 2019) (citing Marom v. City of New York, No. 15 Civ. 2017 (PKC), 2016 WL 916424 (S.D.N.Y. March 7, 2016)).  As discussed in Part E, *supra*, the only allegation in the Amended Complaint that Agent Luna forwarded false information to prosecutors is that Special Agent Luna "furthered . . . lies before the grand jury." (Am. Compl't at 1.)  The Amended Complaint makes this allegation in a "broad and conclusory" fashion, and does not specify any particular statements made to prosecutors or the grand jury that were false or fraudulent.  For this reason, Amador's denial of a right to a fair trial claim will be dismissed.

CONCLUSION

Defendants' motion to dismiss the Amended Complaint is GRANTED.  The Clerk is respectfully directed to terminate Doc 18, enter judgment for the defendants and close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        March 28, 2022